UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER JONES, | ) | Civil No. 09cv1896-JM (DHB) |
| Petitioner, | ) ) | **REPORT AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | ) ) ) | |
| MATTHEW CATE, Secretary, | ) ) | **[ECF No. 69]** |
| Respondent. | ) ) ) | |

On August 28, 2009, Petitioner, a state prisoner represented by counsel,[1] filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.[2]) On February 14, 2012, Respondent filed a Motion to Expand the Record and Dismiss the Petition. (ECF No. 69.) Respondent contends that the Petition should be dismissed as untimely. On August 30, 2012, Petitioner filed an Opposition (ECF No. 97) and on November 27, 2012, Respondent filed a Reply. (ECF No. 105.) The Court has reviewed the parties' pleadings, the record, and controlling law, and for the reasons discussed below, hereby **RECOMMENDS** the Motion to Dismiss be **GRANTED**.

---

[1] At the time Petitioner filed his Petition, he was proceeding *pro se*. Subsequently, on April 11, 2011, the Court granted Petitioner's Motion for Appointment of Counsel, and appointed Federal Defenders of San Diego to represent Petitioner. (*See* ECF No. 49.)

[2] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the Court's electronic case filing system.

...

**I.     PROCEDURAL BACKGROUND**

On July 24, 1995, a jury convicted Petitioner of one count of second degree murder and personal use of a firearm. (Lodgment No. 1 at 379.) On August 21, 1995, the trial court sentenced Petitioner to a prison term of 25 years to life. (*Id.* at 411.) Petitioner appealed to the California Court of Appeal, which affirmed the judgment on May 9, 1997. (Lodgment No. 2). Petitioner then filed a petition for review in the California Supreme Court. (Lodgment No. 3.) On August 20, 1997, the California Supreme Court denied the petition. (Lodgment No. 4.) Petitioner did not seek certiorari from the United States Supreme Court. Therefore, his conviction became final on November 19, 1997. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999) (conviction becomes final 90 days after the California Supreme Court denies a petition for review).

On November 4, 2003, Petitioner filed a state habeas petition in the San Diego Superior Court. (Lodgment No. 5, Ex. D.) The Superior Court denied the petition as untimely on December 4, 2003. (*Id.*) On August 27, 2004, Petitioner filed a habeas petition in the California Court of Appeal. (Lodgment No. 5.) The Court of Appeal denied the petition on the merits on September 15, 2004. (Lodgment No. 6.) On August 23, 2005, Petitioner filed a habeas petition in the California Supreme Court. (Lodgment No. 7.) The petition was denied on June 14, 2006. (*Id.*)

On March 16, 2009, Petitioner filed a second habeas petition in the San Diego Superior Court. (Lodgment No. 16.) The petition was denied as untimely on May 15, 2009. (*Id.*)

On August 28, 2009, Petitioner filed the instant federal Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. The Petition raises four ground for relief: (1) Petitioner is entitled to equitable tolling due to his mental illnesses and other extraordinary circumstances; (2) ineffective assistance of trial counsel for failure to present an intoxication defense; (3) instructional error; and (4) prosecutorial misconduct. (ECF No. 1.)

On December 3, 2009, Respondent filed a Motion to Dismiss on the ground that the Petition was untimely. (ECF No. 9.) On April 23, 2010, the Honorable Louisa S Porter issued a Report and Recommendation, recommending the motion be denied without prejudice. (ECF No. 13.) The Court found the Petition was time barred under 28 U.S.C. § 2244(d), unless Petitioner could show he was entitled to equitable tolling. (*Id.*) However, the Court found the record of Petitioner's mental health history was

1  insufficient to permit resolution of the equitable tolling issue. Therefore, the Court recommended that
2  Respondent be permitted to re-file the Motion to Dismiss after expanding the record by lodging with the
3  Court copies of documents in the custody of the California Department of Corrections that would tend to
4  indicate Petitioner's mental condition during the relevant time period. (*Id.*) On July 12, 2010, the district
5  court adopted the Report and Recommendation and denied the Motion to Dismiss with leave to amend.
6  (ECF No. 18.)

7  On September 30, 2010, Respondent filed a second Motion to Dismiss. (ECF No. 23.) Concurrent
8  with the filing of the motion, Respondent lodged 478 pages of Petitioner's mental health records.
9  (Lodgment No. 13.) Respondent again contended that the Petition was time barred and Petitioner was not
10  entitled to equitable tolling.

11  On October 13, 2010, Petitioner filed a Motion for Appointment of Counsel, and the Court sought
12  guidance from the parties on whether to appoint counsel. (ECF Nos. 25 and 30.) On January 3, 2011,
13  Petitioner filed a Motion to Amend the Petition. (ECF No. 38.) On April 11, 2011, the Court granted the
14  Motion for Appointment of Counsel, and appointed Federal Defenders of San Diego to represent Petitioner.
15  (ECF No. 49.) That same day, the Court issued a Report and Recommendation, recommending that
16  Respondent's second Motion to Dismiss and Petitioner's Motion to Amend be denied without prejudice,
17  in light of the appointment of counsel. (ECF No. 50.) On July 26, 2011, the Report and Recommendation
18  was adopted in its entirety. (ECF No. 52.)

19  On August 19, 2011, the Court held a status conference and ordered Respondent to locate and
20  produce Petitioner's complete medical records and complete central file. (ECF No. 55.) On October 3,
21  2011, the Court held a further status conference and ordered Respondent to file a third Motion to Dismiss.
22  (ECF No. 58.) On October 27, 2011, Respondent filed the Motion to Dismiss and supplemental lodgements
23  14, 15, and 16. (ECF No. 60.) On February 6, 2012, Respondent filed a Motion to Strike its Motion to
24  Dismiss and supplemental lodgments, after learning the lodgments contained records that did not relate to
25  Petitioner. (ECF No. 67.) The records that Respondent had lodged related to another prisoner named
26  Christopher Jones who was housed at the same facility as Petitioner. On February 9, 2012, the Court
27  granted the motion, and ordered Respondent to re-file its motion with the correct records. (ECF No. 68.)
28

3

1     On February 14, 2012, Respondent filed the instant Motion to Dismiss and lodged several hundred new pages of records relating to Petitioner. (ECF Nos. 69 and 70.) Subsequently, Petitioner and Respondent sought numerous continuances in order to review the new documents and to obtain expert reports. (*See* ECF Nos. 72, 75, 83, 85, 90, 100, 102, and 104.) On August 30, 2012, Petitioner filed an Opposition (ECF No. 97), and on November 27, 2012, Respondent filed a Reply. (ECF No. 105.)

**II.  DISCUSSION**

    Respondent argues the Court should dismiss the Petition because it is time barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d). Respondent further argues Petitoner is not entitled to equitable tolling because the overall record does not demonstrate Petitioner was unable to file a timely petition. Petitioner counters that he is entitled to equitable tolling because he was incapable of filing his Petition between 1997 and 2009 due to profound cognitive deficits and severe mental illness, and he did as much as he was capable of to pursue his federal remedies. Alternatively, Petitioner asks for an evidentiary hearing to prove that he is entitled to equitable tolling.

    The Court has before it an extensive record of Petitioner's medical and administrative history, two expert reports submitted by Petitioner, and a letter report submitted by Respondent. (Lodgment Nos. 13-15; ECF Nos. 97-1; 97-2; and 105, at 8-9.) In light of the substantial record, the Court concludes the equitable tolling issue may be resolved without an evidentiary hearing or further development of a factual record. *See Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010) (holding that when the record is amply developed "a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence").

    **1.  Legal Standard**

    Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year period of limitation applies to an application for writ of habeas corpus filed "by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitation period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking

4

such review."[3] 28 U.S.C. § 2244(d)(1)(A). Here, Petitioner's conviction became final on November 19, 1997. Therefore, he had until November 19, 1998 to file a timely federal habeas petition. However, the Petition was not filed until August 28, 2009. As the Court has already found, the Petition is untimely because it was filed approximately ten years and nine months after the statute of limitations expired. (*See* ECF No. 13 at 3.) The Court has also already found that statutory tolling does not apply. (*Id.* at 3-4.) Therefore, the remaining issue before the Court is whether Petitioner is entitled to equitable tolling between November 1997 and August 2009.

The one-year limitations period under AEDPA is subject to equitable tolling. *Holland v. Florida*, --- U.S. ---, 130 S.Ct. 2549, 2560 (2010). To qualify for equitable tolling, Petitioner bears the burden to show "'(1) that he has been pursing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.*; *Raspberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2007). The determination of whether a petitioner is entitled to equitable tolling is "highly fact-dependent." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005). Further, equitable tolling is unavailable in most cases. *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999).

Mental incompetence may equitably toll the statute of limitations. *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003); *Calderon v. United States District Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998). "Where a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled." *Laws*, 351 F.3d at 923. However, the existence of a mental illness or cognitive impairment does not necessarily warrant equitable tolling. A petitioner must establish a causal connection between his mental impairment and his failure to meet the AEDPA filing deadline. *Id.*

In *Bills v. Clark*, 628 F.3d 1092, 1099-1101 (9th Cir. 2010), the Ninth Circuit established the following two-part test for determining a petitioner's eligibility for equitable tolling based on mental impairment:

> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control, [] by demonstrating the impairment was so severe that either

---

[3] Respondent does not argue, nor does this Court find, that §§ 2244(d)(1)(B), (C) or (D) applies to the facts and procedural history of this case.

5

> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable to personally prepare a habeas petition and effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Id.* at 1099-1100.

The first prong of the *Bills* test is satisfied if the petitioner's mental impairment was so severe that it prevented the petitioner "from understanding the need to file, effectuating a filing on his own, or finding and utilizing assistance to file." *Id.* at 1100. The second prong of the *Bills* test is a "totality of the circumstances" test, which "considers whether the petitioner's impairment was a but-for cause of any delay." *Id.* Moreover, the Court must consider "whether the circumstances demonstrated the petitioner was otherwise diligent in attempting to comply with the filing requirements" and exploiting whatever assistance was "reasonably available." *Id.*

The *Bills* court further explained that put into practice, the test requires the district court to: "(1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements." *Id.* at 1100-1101.

**2. Application**

Based on Petitioner's extensive medical records and the reports submitted by his experts, it is apparent Petitioner is in fact mentally impaired and suffers from both mental illness and cognitive impairments. Since his incarceration in 1995, Petitioner has been diagnosed with, and received treatment for, various mental disorders. Petitioner suffers from auditory and visual hallucinations and paranoia. (Lodgment No. 13 at 83, 127, 139, 175, 405, 412-14, 429, 437, 449; Lodgment No. 14 at 1043-45.) Petitioner's diagnoses have included schizoaffective disorder, schizophrenia, psychotic disorder, PTSD, delusional disorder, bipolar disorder, major depressive disorder, and amphetamine abuse. (Lodgment No.

13 at 81, 97, 100, 301, 308, 314, 412-14, 416, 425 463-65, 665; Lodgment No. 14 at 17, 30, 70, 124, 685, 1161.) Petitioner has been prescribed a host of psychiatric medications, which he has gone on and off of over the years. (Lodgment No. 13 at 19, 26, 175, 383, 384, 425, 429, 433, 437, 466, 477.) These medications include: Navane, Cogentin, Artane, Sinequan, Trilafon, Haldol, Stemzine, Lithium, Elavil, Thorazine, Zoloft, Seroquel, Prozac, Risperidone, Depakote, Vistaril, Olanzapine, Serzone, Wellbutrin, Ziprasidone, and Abilify. (ECF No. 97-1 at 41-43.) Despite being treated for over a decade, Petitioner remains symptomatic. (*Id.* at 26.)

Petitioner submitted expert reports by George W. Woods, Jr., M.D., a licensed psychiatrist, and Stacey Wood, Ph.D., a clinical neuropsychologist. Dr. Woods conducted a mental status examination of Petitioner in April 2012. (*See* ECF No. 97-1.) Based on that examination, Dr. Woods described Petitioner as "a profoundly impaired man with significant mental and cognitive impairments." (*Id.* at 3.) Dr. Woods stated that Petitioner "has an IQ of 57, placing him squarely in the mentally retarded range." (*Id.*) Dr. Woods concluded that Petitioner's "[m]ental illness is secondary to his severe brain impairments." (*Id.*) Dr. Woods opined that Petitioner's longstanding cognitive deficits, augmented by his psychiatric symptoms, prevented him from personally being able to prepare a habeas petition from the time of his incarceration through the time of the examination. (*Id.* at 3, 16-18.) Dr. Woods further opined that Petitioner was unable to seek help from others to pursue his federal remedies. (*Id.* at 3.)

Dr. Stacey Wood examined Petitioner over the course of two days in May 2012. (*See* ECF No. 97-2.) During that time, Dr. Wood conducted a battery of neuropsychological and intellectual functioning tests on Petitioner. Dr. Wood found that Petitioner's IQ was 57, indicating he is in the mildly intellectually disabled range. (*Id.* at 28.) Dr. Wood concluded that Petitioner has significant cognitive impairments that are "of longstanding duration." (*Id.* at 31.) Dr. Wood noted that Petitioner's executive functioning was severely impaired, that he is unable to understand abstract concepts, and he needs to be instructed in clear and concrete terms. (*Id* at 29.) Dr. Wood also stated Petitioner demonstrated poor cognitive flexibility, indicating difficulty with problem solving. (*Id.* at 29-30.) She also noted that Petitioner's thinking is "slow, concrete, and rigid." (*Id.* at 30.) Dr. Wood opined that Petitioner has had "deficits in neuropsychological functioning during the timeframe 1995 - present" (*id.* at 33) and that the impairments "are permanent and will be worse when psychotic symptoms are present." (*Id.* at 3, ¶ 10.)

7

Petitioner also submitted several declarations to support his contention that he has a severe mental impairment that prevented him from timely filing his Petition and that he was adequately diligent in his efforts to file. Petitioner submitted a declaration from his half-brother, Myron Sandifer. (ECF No. 97-3.) Mr. Sandifer states that people took advantage of Petitioner because he did not stand up for himself and he did not have "street smarts." (*Id.* at ¶ 3.) He notes that Petitioner had held several jobs, but his jobs did not require critical thinking or planning. (*Id.* at ¶ 5.) Mr. Sandifer states that when Petitioner worked in his cabinet installation business, Petitioner was only able to do simple tasks. (*Id.* at ¶ 7.) Mr. Sandifer also states that Petitioner never lived on his own, but did have an apartment with his wife at one point. (*Id.* at ¶ 10.) Mr. Sandifer states that after Petitioner was incarcerated, he often sounded groggy, had trouble thinking, and was taking a lot of medications. (*Id.* at ¶ 12.)

Petitioner also submitted declarations from fellow prisoners. These inmates generally describe Petitioner as vulnerable, having mental health issues, being difficult to communicate with, and lacking the ability to understand legal proceedings. (*See* ECF Nos. 97-4, 97-5, 97-6, 97-7, 97-8, 97-9, and 97-10.) Calvin Christopher Hughes, an inmate housed with Petitioner in 1995, states that he helped Petitioner draft letters and fill out paperwork because Petitioner "could not articulate very well what was happening with his case." (ECF No. 97-4 at ¶ 14, 15.) Leon Davis, Petitioner's cell mate in 1997, states that he prepared a habeas petition for Petitioner. (ECF No. 97-5 at ¶ 18.) He states he asked Petitioner if he could help with the petition because Petitioner "did not understand what was going on." (*Id.* at ¶ 19.) Mr. Davis also states he wrote 602 appeals for Petitioner because he didn't believe Petitioner would be able to prepare them himself. (*Id.* at ¶ 23.) Anthony Brown, who was housed with Petitioner at Centinela State Prison in 2008, states that he believed other inmates helped Petitioner write his 602 appeals because Petitioner did not appear capable of preparing them himself. (ECF No. 97-7 at ¶ 15, 16.) Theotis Golden, an inmate housed with Petitioner at Centinela in 2008-2009, states he helped Petitioner prepare a writ of habeas corpus because Petitioner "had problems expressing himself." (ECF No. 97-8.) Joseph Gallardo, another inmate at Centinela, states that in 2009, he prepared Petitioner's federal Petition. (ECF No. 97-9 at ¶ 7.) Mr. Gallardo states that he met Petitioner in the prison's law library, where Petitioner appeared confused and frustrated. (*Id.* at ¶ 2.) Mr. Gallardo offered to help Petitioner, and Petitioner gave him his paperwork. (*Id.* at ¶¶ 4, 6.) Mr. Gallardo states that because of Petitioner's mental health issues, he prepared the Petition

8

without Petitioner's assistance.  (*Id.* at ¶ 9.)

Finally, Petitioner submits his own declaration, and a declaration from his current court-appointed counsel.  Petitioner states he has difficulty reading and writing, and that sometimes the words appear to move on the page.  (ECF No. 97-11 at ¶ 2, 4.)  He acknowledges that he filed 602 appeals, but says he always had help with them.  (*Id.* at ¶ 3.)  He states that other inmates would write out the complaint and he would copy their words onto the 602 form.  (*Id.*)  Zandra Lopez, counsel for Petitioner, states that when she met with Petitioner on August 21, 2012, he told her he has heard voices and has had hallucinations every day since being incarcerated.  (*Id.* at ¶ 5.)  When Ms. Lopez attempted to discuss the status of his Petition, Petitioner had difficulty understanding the current proceedings, and did not know what the term "habeas" meant.  (ECF No. 97-12 at ¶ 6.)  Ms. Lopez notes that Petitioner also had difficulty understanding words such as "corroborate," "administrative," and "specifically."  (*Id.* at ¶¶ 6, 9.)  She states that Petitioner told her he has always had other inmates help him read and write because he is unable to do it on his own.  (*Id.* at ¶ 9.)  Ms. Lopez also states that although Petitioner has worked in the prison law library, his job only consisted of retrieving books that were placed in numerical order and handing them over to other inmates.  (*Id.* at ¶ 8.)

In response, Respondent submits a letter report from Dr. Alexis Vosburg, a psychologist at California Men's Colony State Prison.  (ECF No. 105 at 8-9.)  Dr. Vosburg reviewed Dr. Stacey Wood's report, Petitioner's C-File, a portion of Petitioner's health records, and consulted with Petitioner's current clinician, work supervisor, and group facilitators.  (*Id.* at 8.)  Dr. Vosburg opined that "there is some indication that [Petitioner] is able to advocate for himself and utilize positive adaptive functioning skills."  (*Id.*)  Dr. Vosburg notes that when Petitioner was initially screened in 1995, his score on an brief intellectual screening tool placed him in the "normal cognitive functioning range," and that Petitioner has never been referred for a developmental disabilities program evaluation.  (*Id.*)  Dr. Vosburg states that Petitioner's current clinician and recent treatment plans indicate no cognitive deficits have been observed.  Dr. Vosburg states Petitioner has been successful at his prison job and attends two treatment groups.  (*Id.*)  Dr. Vosburg also states Petitioner has filed several 602 appeals, and the nature of the appeals indicate "at the very least that he expressed his concerns and advocated for himself enough to communicate his needs and concerns to another inmate if he in fact had assistance writing these appeals from others."  (*Id.* at 8-9.)

9

/ / /

/ / /

/ / /

/ / /

### a. Whether Petitioner's Mental Impairment Was an "Extraordinary Circumstance" Rendering Him Unable to Timely File the Petition

The Court has carefully reviewed Petitioner's medical and prison records, and the expert opinions provided by both Petitioner and Respondent, and finds that Petitioner has shown he has a mental impairment. However, the Court further finds that Petitioner is unable to satisfy the first prong of the *Bills* test. Showing a mental impairment alone does not warrant equitable tolling. To meet the first prong of the *Bills* test, Petitioner must show his mental impairment prevented him "from understanding the need to file, effectuating a filing on his own, *or finding and utilizing assistance to file*." *Bills*, 628 F.3d at 1100 (emphasis added).

Here, the record reflects that Petitioner has consistently struggled with mental illness since his incarceration in 1995. His longstanding cognitive impairments have also been present throughout his incarceration. (*See* ECF No. 97-2 at 31-33.) Indeed, Petitioner asserts his mental condition has remained unchanged from the date his conviction became final in 1997, until the filing of his federal petition in 2009. Yet, despite his mental impairments, Petitioner was able to effectuate the filing of a state habeas petition on November 4, 2003. (Lodgment No. 5, Ex. D.) Thereafter, Petitioner filed further state habeas petitions on August 27, 2004, August 23, 2005, and March 16, 2009. (Lodgments Nos. 5, 7, and 16.) Although Petitioner may not have been capable of filing these petitions on his own, he did find and utilize assistance to file them. The fact that Petitioner was able to pursue relief in the state courts indicates that by at least 2003, he also had the ability to seek federal relief. *See Gaston v. Palmer*, 417 F. 3d 1030, 1035 (9th Cir. 2005) (affirming district court's finding that a habeas petitioner was capable of filing federal petition when he was able to file state petitions during the same time period.) Therefore, even assuming Petitioner might be entitled to equitable tolling prior to November 4, 2003, his habeas filings after that date preclude a finding that he is entitled to equitable tolling all the way through 2009.

The Court also notes that Petitioner, although impaired, was functional during the relevant

1  timeframe.[4] For instance, despite his mental impairments, Petitioner has successfully held prison jobs and
2  was able to participate in prison programs. (*See* Lodgment No. 15 at 171 (worked in kitchen utility service);
3  515 (worked as library clerk and chapel clerk); 520 (enrolled in vocational training); 308 (certificate of
4  completion, anger management course), 318 (certificate of completion, alternatives to violence course);
5  ECF No. 97-2 at 20 (currently works in prison shoe factory); and ECF No. 105 at 8 (noting Petitioner
6  currently attends two treatment groups).) Therefore, this case is distinguishable from those where the
7  petitioner was almost totally incapacitated. *See e.g. Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003)
8  (petitioner asserted without contradiction, that he was not even conscious during much of the relevant
9  period); *Bailey v. Lewis*, 2012 WL 3561863 (E.D. Cal. Aug. 17, 2912) (petitioner was restricted to a mental
10 health crisis bed during relevant time period, and was unable to even sign his habeas petition).

11  In light of Petitioner's ability to file state habeas petitions beginning in 2003, despite there being no
12 change in the circumstances of his mental impairment, the Court finds Petitioner fails to meet the first *Bills*
13 prong. Therefore, he is not entitled to equitable tolling.

### b. Whether Petitioner was Diligent in Pursuing His Claims

15  With regard to the second prong of the *Bills* test, Petitioner must show that he was diligent in
16 pursuing his claims, and that his impairment was the "but-for" cause of delay. *Bills*, 628 F.3d at 1100.
17 Here, Petitioner argues that he satisfies the diligence prong because he was incapable of effectively seeking
18 assistance. In support of this contention, Petitioner cites Dr. George Woods' opinion that Petitioner "has
19 shown an inability to ask for support and direction since he has been incarcerated." (ECF No. 97-1 at 25.)

20  However, looking at the totality of the circumstances, the Court finds this opinion is contradicted
21 by the record. Petitioner repeatedly found and utilized assistance throughout his incarceration. At least five
22 different inmates assisted him with his appeals and habeas petitions. (*See* ECF Nos. 97-4 at ¶14; 97-5 at
23 ¶ 18; 97-6 at ¶ 10; 97-8; 97-9 at ¶ 7.) In addition, the record shows that Petitioner was able to obtain
24 assistance in filing numerous 602 appeals. (*See* ECF Nos. 97-5 at ¶ 23; 97-6 at ¶ 10; Lodgment No. 15 at
25 275-478.) Indeed, Petitioner concedes that he always had help with his 602s, which indicates he had some

---

[4] The Court further notes that prior to his incarceration, Petitioner graduated high school, got married and lived in an apartment with his wife, and had a fairly extensive work history. (*See* ECF No. 97-3 at ¶ 5, 10; Lodgment No. 15 at 505.)

11

ability to procure that assistance. (*See* ECF No. 97-11 at ¶ 3.) Petitioner contends any assistance he did receive was simply a result of other inmates taking pity on him. While some inmates may have been motivated to help Petitioner out of pity, the record does not show that every inmate who ever assisted Petitioner did so solely on their own initiative. *See e.g.*, ECF No. 97-4 (declaration of Calvin Christopher Hughes stating he helped Petitioner with his legal paperwork, but is silent regarding whether Petitioner asked for his help); ECF No. 97-6 (declaration of Lidu Firas referring to unidentified "Cuban inmate" who helped Petitioner with habeas petitions and 602 appeals, but provides no further details); ECF No. 97-8 (declaration of Theotis Golden stating he helped Petitioner with habeas petition even though he didn't have time to do so, but does not describe the circumstances of how he came to assist Petitioner). Therefore, the record on a whole does not support a conclusion that Petitioner was totally unable to seek or exploit assistance from others.

Additionally, Petitioner does not cite to any changed circumstances of his mental condition between his incarceration and the filing of the instant petition. His mental impairments have remained the same. But they did not prevent him from filing state petitions or the instant petition. As the Eastern District of California recently observed in a similar case:

> By conceding that he still suffers from the same mental deficits to this day, he does not show what obstructed him from making his state court habeas filings until he ultimately did and the instant filing as well. In other words, he does not demonstrate that he was sufficiently diligent in trying to meet the requisite timelines during the period for which he seeks equitable tolling if his situation the status quo remains unchanged.

*Enquist v. Chavez*, 2012 WL 2872795, * 7 (E.D. Cal. July 11, 2012). The Court finds this reasoning persuasive and equally applicable here. Accordingly, based on the totality of the circumstances, the Court finds Petitioner fails to meet the second *Bills* prong, and is therefore not entitled to equitable tolling.

### III. CONCLUSION AND RECOMMENDATION

After a through review of the record in this matter and based on the foregoing analysis, the Court **HEREBY RECOMMENDS** that Respondent's Motion to Dismiss be **GRANTED**.

The Court submits this Report and Recommendation to United States District Judge Jeffrey T. Miller under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(d) of the United States District Court for the Southern District of California.

**IT IS HEREBY ORDERED** no later than **January 28 ,2013** any party to this action may file

written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** any Reply to the Objections shall be filed with the Court and served on all parties no later than ten (10) days after being served with the objections. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: January 14, 2013

DAVID H. BARTICK
United States Magistrate Judge